al. You may proceed. Thank you, Judge Graves. May it please the Court, Kyle Hawkins for the State Officials. Federal courts lack jurisdiction to enter retrospective equitable relief against state officials. Equitable judgments against state officials are available only to remedy ongoing harms and prospective harms. That principle controls this appeal in two ways. First, it forbids the district court's retrospective declaratory relief. That's paragraph two of the final judgment? That's correct, Your Honor. Second, it confirms that the Freedom From Religion Foundation is not entitled to an injunction. This court should reverse and render judgment for the state officials. I'll focus first on the declaratory judgment and then turn to injunctive relief. But the first paragraph is declaratory without the past tense. Well, Your Honor, that is true. The court does not always use past tense versus present tense. But I think when we look at the face of the declaration, it's inherently retrospective looking. The court declares that what happened in 2015 was unlawful when the exhibit was removed from the Capitol. It was unlawful. That's the second paragraph as I read it. The declaration at the beginning says, you know, you win as to your First Amendment viewpoint discrimination claim. That seems to contemplate what the essence and substance of their complaint was as to a present and ongoing injury. Your Honor, I think the core sentence in the district court's order is, quote, under the circumstances of the state. That's in the second paragraph. It's true that that's in the second paragraph. But the problem with the first paragraph, Your Honor, even if it's not phrased in terms of the past tense, retrospectively, the nature of the injury is inherently retrospective. And a court cannot look at what happened to the injury as they alleged it. The nature of the injury as they've alleged it, and this is confirmed on page 23 of their brief, they say that this is about past conduct. And they're trying to use past conduct to get a declaration and an injunction when there's no ongoing harm. And that's what makes the district court's order retrospective. All of the evidence that they cite is from 2015 and 2016. The 2016 evidence is powerfully future focused. Any submission that you submit will be denied. Will be. That was consistent with the law prior to Mattel versus Tam. But this is the crucial point. This is the pivot point. Mattel has led your client to decide we'll never do this viewpoint discrimination again. Your Honor, Mattel makes clear in 2017, a year after that letter was sent, that the government cannot disallow speech in a limited public forum on the grounds that it's offensive or disparaging to certain groups.  There's no application in 2017 or in 2018. When you say since, so the district court lost jurisdiction as of what moment? The moment of Mattel's issuance? Well, Your Honor, the district court has never had jurisdiction because the award that they're complaining or the conduct they're talking about, complaining about is retrospective. When I look at the complaint, I mean, I may be wrong, but it seems like, and the decision is the Papasan, we will divide it up and look at, did they allege present and ongoing injury? It's, to me, indisputable they did. Your Honor, we're not at the motion to dismiss stage. This is an appeal from final judgment following a summary judgment record. Mattel comes down and for a good amount of time, you continue to litigate in district court that, nope, that has not affected anything. You're arguing to distinguish. Your Honor, that was in a separate component to the litigation, claims against Governor Abbott in his individual capacity, and they dismissed those claims. What I'm here representing in court today is that in 2017, the Supreme Court made clear that the government cannot disallow speech in a limited public forum on the grounds that it's offensive or disparaging of certain groups. They won't take yes or no. For a second motion for summary judgment, you never raised Mattel? Your Honor— The second motion was post-Mattel, but you never raised it in that motion. Is that right? Your Honor, Mattel was decided, I believe, in June, shortly before the district court issued its order. We have, of course, raised Mattel now in two different briefs publicly filed in this court, where we— Did you file a second motion for summary judgment in July of 2017? I don't believe— July 27th, 2017? I don't believe we did, Your Honor. There would be no need to do that. The order that the district court has entered is retrospective in its nature. Since Mattel was decided, there is no application for a permit at any time. There's no application for a permit pending today. They have not asked us to put up another— Where in the record will we see any indication as to a changed policy or any assurance to this applicant that hereafter religious satire will be allowed? Your Honor, we filed a brief in this court a year ago, in November of— Your position is that attorney argument can demonstrate voluntary cessation? Your Honor, I'm here representing the state officials in their official capacity, and And I just want to point out that unless my court documents are incorrect, because I'm looking at a court document which has a filing date of July 27th, 2017. Now, I heard you tell me there would have been no need for you to file this, but it's entitled Defendant's Second Motion for Summary Judgment. Your Honor, I may have been mistaken in the dates that I described. The important point, Your Honor, is that they're refusing to take yes for an answer. We are here saying that we cannot— Your Honor, I don't know that I've got a case about that exact set of facts, but of course we do have cases talking about where the government has said that they're no longer enforcing something or not taking a stand in something. If they wanted to get relief, they would need to show a pattern of previous enforcement combined with statements from government officials that they're going to do this again in the future. Yes, I'm— A good case is— I'm thinking that the board's statement in July of 2016 is about as future-focused as you can get and categorical. But it's before Mattel v. Tam, and Mattel has changed things, as we've said. Now take Susan B. Ann— But you never argued this to the district court, did you? Well, Your Honor, we did not argue the point that I'm making today in district court. That's true. But it shouldn't matter because— Even if there were authority, that it would matter— Disagree with me if you— You will. It's a unanimous opinion that frontally says time and again. And your counter-citation to that, suggesting it's novel and had that case existed, the governor wouldn't have sent his letter to Mr. Sneed, is to cite the Tulane Law Review article that you saw in their response brief doesn't suggest that this was a sea change of First Amendment law. Oh, it was, Your Honor, and you don't have to take my word for that. The Second Circuit, in the Wandering case that we've cited in our brief, talks about this as being a sea change. Mattel says, quote—this is at page 31—provide substantial guidance regarding viewpoint discrimination in the context of speech labeled offensive. Substantial guidance? I mean, am I right that the Supreme Court itself, in that decision, said time and again we've prohibited this? Did they use the phrase time and again? The problem, Your Honor— Did they use the phrase time and again? In Mattel, they do say time and again the government cannot engage in viewpoint discrimination, Judge Higginson, but that stands against the backdrop of all of the limited public forum cases that say the government can control content. What about the district court here, when it gets to viewpoint discrimination, Mattel is not the first authority it cites. It cites Good News and it cites Rosenberg. Your Honor— That doesn't show up until the fifth citation. Your Honor, the whole reason the court granted cert in Mattel was because it needed to clarify this area of the law. We can speculate about why they granted cert. Our focus is on the district court. Your brief said the one reason the district court entered its ruling was Mattel. When I look at the district court's opinion, that's just contradicted. It doesn't even get to Mattel until the fifth citation. Your Honor, Mattel was part of the district court's analysis— Part of, but your brief said it was the one reason. Your Honor, I think the important point here is that prior to Mattel, the Supreme Court's content-based cases in limited public forums give governments leeway to control the content by setting ground rules. That's RAV v. St. Paul. That's the Good News Club case. That's Ward v. Rock against racism. And those principles have led governments and courts around the country to allow the same thing that we did here. The First Circuit, of course, in a case called Freedom of Defense, allowed the state of Massachusetts to exclude pro-Israel posters from its buses and subways on the basis that it might offend Palestinians. If we decide that their complaint was both retrospective, arguably impermissible, but also prospective, consistent with the July 2016 letter, if we decide that, would it be not—we've discussed whether it's viewpoint discrimination. I'm wondering whether their argument as to unbridled discretion doesn't rest very soundly on Shuttlesworth. So the question to you is, do you know of any Fifth Circuit case applying Shuttlesworth? With regards to unbridled— Yes. Unbridled discretion claim. I don't know of a Fifth Circuit case— I couldn't find one. I'm sorry. Yeah, I couldn't find one either. So why isn't this almost equivalent to what existed in Shuttlesworth, best interest standard, or—and I'm sure you know these cases—the Fourth Circuit, what is it, child evangelism case? Yet again, they say best interest type guidelines leave unbridled discretion facially flawed. Your Honor, there are sentences—the statute doesn't just say best interest or public purpose. It gives three sentences cabining that discretion, and in page 13 and 14 of our reply brief, we cite cases like Forsyth County, Thomas, and the cases— That's Laurel's cabin. Well, Your Honor, I think the way to read that is the government is saying we don't want obscene speech. Morals can be read as the opposite of obscene, and of course it's well settled that government's going to— You think morals means that what it can do is knock out completely unprotected speech? Child pornography, obscenity, true threats. Well, I think— But nothing beyond that. Well, I think, Your Honor, we have to read the statute in a way that would make it constitutional, and of course we now know after Mittal that morals can't be read to say no offensive speech, but it's well settled, of course, that statutes can be read to exclude obscene speech, fighting words, all of those doctrines, and I think we need to read the statute in a way consistent with all of that authority. Let me ask you this. What objective language do you see in the statute that would guide the decision maker, the board, or the governor in deciding, for example, whether he would allow and exhibit either pro-abortion or pro-choice or whatever, or, say, global warming? What objective language would guide the decision maker? Well, Your Honor, there's a couple things about that. First, as I said— I mean, can you point to any language first? Well, Your Honor, the second sentence in Section 111.13, Subsection C, does give a chief test for how we're supposed to apply these standards, and that does set out a standard that the government officials can use. But stepping back from that, Judge Davis, I think it's important to note they've raised this unbridled discretion argument, but it's not actually tied to any claim. Now, as we cite in one of the footnotes in our brief, unbridled discretion claims are facial challenges to statutes. They haven't asked for 111.13 to be enjoined. They haven't asked for it to be declared facially unconstitutional. They haven't asked us to shut down the program. That's the remedy that you normally seek in an unbridled discretion claim. They're just saying that this grants unbridled discretion, but they're not asking for anything in connection with that. They're saying, and please declare what happened in 2015 unlawful. So there's a disconnect there. There may be that disconnect, but again, back to, you know, if Shuttleworth is controlling, what's your best circuit authority that this type of language has sufficient standard and determinateness to avoid self-censorship and to allow for review? Well, I can do better than that. The Supreme Court in the 1978 Penn Central case—this is on page 15 of our brief—upholds the use of public purpose in a different context. We've learned from cases like— Against an unbridled discretion allegation? Well, it's not that same type of allegation, Your Honor. So what's your best case involving Shuttleworth, where the allegation is facially flawed because it's unbridled discretion, that you think has language that's determinative like this one? Your Honor, we don't have a Fifth Circuit case discussing— Not Fifth Circuit. Any circuit. What we do have is the principle set out in Ward v. Rock against racism, that the discretion needs to be tied to the purpose of the form. That gives us broad discretion in that area. You combine that with the Thomas case and the Forsyth County case that we discussed, and you see that we do have adequate discretion. The Supreme Court has been clear time and again that it doesn't need to be perfect. It doesn't need to be crystal clear. It just needs to give enough discretion that government officials can effectuate the purpose of the limited public form. That argument ties to your first assurance to us that both in your briefs and orally here today, Texas's board will no longer use the public purpose test to refuse displays of religious satire. That's your assertion to us? Yes, I think that's right. Let me make sure that we're on the same page. I'm representing today to Judge Higginson in open court that we cannot disallow speech after Mittal in a limited public forum on the grounds that it's offensive or disparaging. Religious satire? Well, Your Honor, religious satire is a broad term. Because once we switch to offensive, then that's looser. Right, we can't reject religious satire. You think you can still reject religious satire? If it were obscene, yes. If it were fighting words, yes. Only for unprotected speech? Correct. Okay. Yeah, I believe we're on the same page, Justice Higginson. Yeah, thank you. The district judge tried his best to get you to articulate what your position was, and he wasn't able to get it. He was thinking about, what kind of injunction am I going to issue? And he never could get a statement from you. Well, Your Honor, he asked the parties to see if they could settle the injunction claim. We weren't able to do that because the injunction was premised on finding liability. Well, we did an original Supreme Court case, and he said, all right, well, tell me what you're willing to agree to. And he never could get it. Your Honor, we couldn't agree to anything because the district court lacks jurisdiction to enter a retrospective injunction. There's no prospect of future. What are we talking about for a continuing violation based on that letter? And, yeah. Your Honor, we could not agree to an injunction because we don't concede liability. That's the but-for requirement to issue an injunction. I see my time has expired. Unless there are further questions, I'll save the remainder of my time for rebuttal. Thank you, Your Honor. Good morning, and may it please the Court. Sam Grover, arguing on behalf of the Freedom from Religion Foundation. When Governor Abbott ordered FFRF's Bill of Rights display removed from the Texas Capitol, he repeatedly criticized the foundation's viewpoint, calling the bill a sarcasm, and claiming it promotes ignorance and falsehood. He cited the State Preservation Board's public purpose requirement as justification for the removal. That same public purpose requirement remains in full effect today. And yet, yet the display was approved according to that test. Your Honor. And Mr. Sneed's testimony was that the governor had never interceded before. Your Honor, the- That suggests that the test itself worked. It was the governor's viewpoint intercession that didn't. No, Your Honor. That demonstrates that the public purpose standard is subjective. Governor Abbott saw the display as violating that standard, and the State Preservation Board ultimately acquiesced to his interpretation of the standard. And the record supports that the State Preservation Board ultimately relied solely on Governor Abbott's interpretation. I guess that record, which is, which is an interesting one, suggested to me more that the viewpoint discrimination occurred when you couldn't get a sponsor for the first display, so it was subjective views of the sponsors that are refusing you, and then at the very end, when the governor decides the day before it's supposed to come down to jump in, but throughout the Preservation Board seemed to be right on track with you that this meets their test. So this is jumping to what I think is the harder issue, that this is facially deficient. Yes, Your Honor. We believe that the standard is facially unconstitutional, and we believe that Shuttlesworth is overwhelmingly analogous on that point. That is, I mean, it's Supreme Court, but it's 1969. Do you agree there's no Fifth Circuit case giving us insight here? Your Honor, I don't have one ready to cite to you. A lot of the other circuits are worried about language like bad taste, offensive, controversial. This, when it says public purpose, my brain did think just the way a footnote they wrote in their briefs said, which is, that's very close to public use, which is a constitutional phrase the Supreme Court has said has enough meaning to take property for. So it would be consequential if we were to say unbridled discretion adheres in the phrase public use, wouldn't it? Your Honor, the unbridled discretion doctrine is solely a free speech doctrine, and would not apply in those public use situations. And so I don't believe that that footnote is on point, either of the cases. Do we have to reach the unbridled discretion issue in this case? Your Honor, I do believe that the court does. What if we conclude that there is an evidence that your client was injured by that test? Because it is quite articulated. It goes down to the chief test here is, do we look at Texas as a whole or not? And that could be seen as no commercial purpose, no child pornography, but actually giving content. Your Honor, the actual standards within that test point to the exact same types of things found unconstitutional in Shuttlesworth. Last question on this, because I do want you to get to viewpoint discrimination. But what is your best circuit authority? That language like this, utilized perhaps by cities and states all over the country, has to be struck down facially. Best circuit's court evidence is probably Child Evangelism Fellowship of Maryland. Fourth Circuit case. Fourth Circuit case, which cites six cases from other circuits, the 7th, 8th, 10th, and 11th. And then additionally, the 6th Circuit in United Food and Commercial Workers Union holds that plaintiffs are likely to succeed on a facial vagueness challenge to a bus advertising policy that prohibited controversial ads on buses. So there are six sister circuits that apply this standard to limited public. Back on your frontal attack and whether this order had perspective declaratory, gave you perspective declaratory relief. Yes, Your Honor. The government's argument here is the ultimate exercise in arguing form over function. The entire case was about FFRF's displays in the future. The ex parte Young test was a straightforward inquiry that was passed at the initial phase of the case. And the district court's declaration, even in the second paragraph, should be properly viewed as having prospective effect. That's very hard for me, too. I've never seen a paragraph that's such a past tense paragraph. It's describing the circumstances that are over. And it throughout is speaking of this occurred in the past. Your Honor, I agree that the language in paragraph two is entirely past tense. The government's censorship of FFRF's display is ongoing. And the government is presumed to comply with the law as decided by the courts going forward. It strains reason to argue that the government could not learn from this declaration and apply that knowledge going forward to not censor FFRF's display in the future. And you heard my questions to him. I thought the first paragraph was independent relief given declaring it hereafter to be unconstitutional. Second paragraph perhaps is divisible and therefore no jurisdiction to enter that under the Papasan case. Do you disagree with that assessment? Your Honor, FFRF has found no cases and the government has cited no cases that contemplate past tense language in a declaration having prospective or retrospective effect solely when there's not also a damages element in the case. And so for that reason, I don't believe that there's any precedent that would control deciding that solely past tense language cannot have a prospective effect. Now, while the wording in the declaration uses past tense language, the arguments advanced in the case were forward-looking. And this court must ultimately decide whether a declaration of constitutional rights that uses past tense language can nevertheless provide guidance for future conduct. Green v. Monsoor is the case primarily cited by the government. But first of all, there was a mootness issue in that case. And the court noted that because of that mootness issue, the specific declaratory relief sought would serve only as a gateway to an award of damages or restitution under res judicata in a state court action. And it's for that reason, the potential for a pocketbook impact through declaratory relief, that the court concluded there could be no prospective purpose to that declaration. I mean, their argument really is a single-issue shot argument, which is jurisdiction ended once they had time to interpret Mattal. And therefore, even if it is prospective and relief, they've ceased and assured us here today and in their brief. And then they cite Authority Judge Jones's dissent in the en banc decision seals that that's enough. Your Honour, the harm to FFRF is ongoing here. Chilled speech is a continuous and ongoing injury, and the record establishes from 2016 that the censorship is ongoing. Now, granted, Mattal came down in 2017. The government has not demonstrated a change in policy sufficient to moot the case after Mattal was decided. The government's burden on this point is formidable. It must demonstrate that subsequent events have made it absolutely clear that the allegedly wrongful behaviour could not reasonably be expected to occur. But you heard today a pretty clear statement, unless I phrased my question wrong. Religious satire, which seems to be the display, perhaps even the first one, will not be excluded based on the public purpose test. Your Honour, the government cites no cases that would stand for the premise that a self-serving argument made on appeal could meet the government's formidable burden. The government attempted to distinguish Mattal in multiple briefs to the district court after the decision came down. First, in the defendant's reply in support of its motion for summary judgment, which is the record on appeal at 1964, the government wrote that Mattal is, quote, ''distinguishable in numerous respects, ''including the fact that it arose in the context of trademark registration ''and wholly outside the context of forum analysis.'' Next, the government's response to plaintiff's motion for appeal and motion for summary judgment, that's the record on appeal at 1882, the government argued that Mattal is, quote, ''at best irrelevant to the present case.'' So, the fact that the government has adjusted its argument on appeal is not well taken. Maybe it's just they, you know, this got elevated to sophisticated counsel that can give full and accurate advice. I guess what I'm wondering is, I know that there were discussions below in district court that got nowhere, but given the statement today, it seems like the two parties are pretty darn close to a line. Would you disagree that Attorney Hawkins's statement today doesn't give you all the perspective relief you would need? We would disagree with that, Your Honour. You would? With all due respect to Attorney Hawkins, his assurances do not substitute for the government's formidable burden to demonstrate a change in policy or practice. The public purpose requirement is in full effect today, and that is the standard by which all future applications for display will be judged. What would satisfy you? A change to the public purpose requirement so that its standards become narrow, objective and definitive moving forward, which is the standard for unbridled discretion. So, you would like a remand to go back before the district court and have all this hashed out in the first instance by the district court? Your Honour, I believe as a matter of law, the public purpose requirement is unconstitutional for granting unbridled discretion, and this court has full authority to find so without remand. That's the very end of your brief. That is the most consequential relief we could give. You've agreed there's no Fifth Circuit case doing that. Very little authority was cited in the principal brief. There was more in the reply brief. This case, to me, looks like a viewpoint discrimination case, and I'm not sure that... I guess the way I think of it is your client was actually injured by the test that favoured your client when it was applied by the appropriate board. Your Honour, there are two evils that unbridled discretion attempts to remedy. The first is self-censorship by... Where in the record did you ever tell the district court that you were being self-centred? It looked like your client was wonderfully provocative, and I'm not saying that as criticism. You weren't at all self-censored because the first display that you brought was quite a bit more provocative than the second. Your Honour... So, my question... I sometimes don't phrase the question. The question is, where in the record did you argue to the district court, this test causes self-censorship? Your Honour, self-censorship is evident from the State Preservation Board's own testimony. OK, but did you ever make that argument to the district court? We've got a Shuttlesworth problem because my client was censored looking at this test. Your Honour, um... It's not fatal, it just seems to me... Reading from the Religious Foundation. Go ahead. Certainly argued unbridled discretion and may have elaborated on that argument more on appeal. But certainly the argument is there in the district court. Robert Davis, the events and exhibit coordinator for the State Preservation Board, testified that people have self-censored under the current public purpose requirement. He said, quote, "'Usually the person who is inquiring will receive information "'from me about our rules up front "'and the potential applicant will decide at that point "'if they want to pursue it further.' "'So a lot of times, by the time they actually get "'to completing an application, obtaining sponsorship, "'the writing is on the wall.'" And it is incredibly difficult to have actual evidence of self-censorship in free speech cases, because by nature, self-censorship means the speaker did not speak. I don't believe the evidence could get much clearer than that on the issue of self-censorship. The second evil that the unbridled discretion doctrine exists to guard against is the difficulty for courts in determining and correcting content and viewpoint-based censorship. And we have evidence of that from the district court as well. The district court's initial confusion over whether Governor Abbott's censorship of the FFRF's display was viewpoint discrimination illustrates this point, that the public purpose requirement is a nebulous standard. The district court initially denied FFRF's motion for summary judgment on its free speech claim because the court could not determine whether the State Preservation Board's censorship, as requested by Governor Abbott, constituted a neutral application of the public purpose requirement. Does the record contain how long public purpose test has existed, how many have been denied, accepted? Do we have much of a record on that point specific to Texas? But I'm also, of course, apprehensive about, my guess is, again, what I said earlier, cities and states and localities, this public purpose-type test must exist all over the country. You think I'm wrong? Your Honor. You're permitting and licensing, you get to protest, you get to put an advertisement up, provided it's in the public purpose. You think those aren't out there? Your Honor, I do not know of whether similar requirements are out there, but I believe this court would be doing a great service to any municipality that has such a requirement. The district court sought insight into Governor Abbott's subjective intent when trying to decide the viewpoint discrimination element the first time around. Now, had there been narrow, objective, and definitive standards, the court, instead of wanting that issue of fact to be tried as to Governor Abbott's subjective intent, had there been objective standards, the court could instead have simply read that standard and applied it to FFRF's display. Now, ultimately, the court did that at the prompting of a second motion for summary judgment, but the public purpose requirement did not aid the court in making that determination because, again, it grants unbridled discretion. On the overlooking of your request for injunctive relief, you're asking us to do what, remand for findings, or by citing the Second Circuit decision in, what is it, the Wandering, what's the caption? Wandering Dago. Wandering Dago. They look to me like the Second Circuit simply said, reverse remand for injunctive relief. Do you recall the relief given in that case? No, Your Honor. So what do you ask? Can you tell us what you think the relief should be as to injunctive? Your Honor, FFRF asks that the court enjoin the government from applying the public purpose requirement in the future to FFRF's. We do it, or we remand for the district court to make findings in order to do that? Your Honor, this court has full authority to do that. To do what? To issue injunctive relief at this stage. I just want to be clear, because I already asked you about remand. Your answer was no. It remains no, no remand. We do not believe that remand is necessary in this case. All right. Did you ask for this relief? Yes, Your Honor. We asked for an injunction against censoring FFRF's display in the future, and- You asked the district court for this relief? Yes, Your Honor. Where did you ask for that? In our first amended complaint, that's record on appeal at 140, paragraph F, judgment against each defendant in joining the defendants from excluding the plaintiff's exhibit at issue from future display in public areas of the Texas Capitol. That's more narrow than what you just told us. Your Honor, we additionally ask for judgment declaring that the criteria to approve exhibits for display in the state capitol facially violates the free speech rights of the plaintiffs. And that gets to the unbridled discretion argument. Your Honors, of course, if this court determines that it cannot, for some reason, issue injunctive relief or satisfy the spatial challenge without remand, then remand would be appropriate. But it is FFRF's position that remand is not necessary given this court's authority. Additionally, Your Honors, the plaintiffs in this case plaintiff appellants, sorry, plaintiff appellees should have been granted this injunctive relief under the four part test that this circuit recognizes. FFRF met all four of those requirements. First, FFRF did succeed on the merits on its free speech claim. Second, the failure to grant an injunction will result in irreparable injury to FFRF. The loss of first amendment rights constitutes per se irreparable harm. And FFRF will continue to suffer the loss of its free speech rights absent injunctive relief. Third, the third factor, FFRF's injury outweighs any injury by the government. The burden lies with the government to present powerful evidence of harm. That comes from this court's opulent life church decision in 2012, and here the government has not identified any injury that would result from issuing an injunction. And second, an injunction would not be a surprise to the government since FFRF has sought an injunction from the beginning and continue to request injunctive relief throughout this case. And fourth, the injunction will not disserve the public interest. Opulent life church also holds, quote, injunctions protecting first amendment freedoms are always in the public interest. For that reason, we believe that the injunctive relief should have been granted. The public has a direct interest in protecting the equal access of minority viewpoints to public fora, which encourages robust debate. And the Constitution is designed to protect minority viewpoints from the tyranny of majority rule. The public purpose requirement, which closely mirrors the language held unconstitutionally vague in Shuttlesworth, remains in full effect today despite granting unbridled discretion to government officials. Do you know, does every display that's put up have the little sign that says, this is a private display and is not endorsed by the state? Is that accompanied with all of them? Your Honor, I don't know if the record says one way or the other. But it is my impression that that was a requirement specifically put on the FFRF's display in 2015 and also on the nativity scene in 2014, which prompted FFRF to apply in 2015. Thank you, counsel.  Thank you, Buttle. Do you have a quick thought on that curiosity question? Is the little thing saying, this is private, it's not endorsed, is that always done for these displays? Or is it just these religious competing viewpoints? I believe the record reflects that it is not put up on it. But it was here. It was here, yes. And it was for the creche or the nativity one that's. I don't know that it was on the Thomas More Society display. I'm not sure about that. I'd have to double check. Just a few points in response, Your Honor. Their core argument is contrary to Supreme Court precedent. I'd refer the court to the Green case at page 71. Because there is no continuing violation of federal law, an injunction is not available. That pronouncement from the Supreme Court controls this case. It confirms that the declaration is impermissible and no injunctive relief is available. Your Honor, Judge Higginson mentioned the Seals case. That case, in turn, relied on the city of Los Angeles versus Lyons. And I think that case is important to consider in this context. In that case, the plaintiff seeks an injunction against the city's use of chokeholds by the police department. But the Supreme Court says he's got no standing to seek that for two really core reasons. Number one, it was speculative whether he would even be arrested again and encounter the police, such that he might be subjected to a chokehold. And second, the city of Los Angeles had announced that it was instructing its police officers to no longer use chokeholds. Don't both those arguments work against you? No, they both work. Well, it's because it's not speculative. That July 2016 letter says it's going to happen to you. So now it rests purely on your assertion that you're, and I very much respect it, that the position, once it's come to your level, has been reassessed. But that's why I'm wondering if there's any case anywhere that says attorney argument can suffice to show voluntary cessation. Your Honor, it's speculative because they haven't even applied. There was no application in 2017, or in 2018, or in 2019. It's speculative whether they're even going to apply again. I'm the Solicitor General of Texas representing the governor, in his official capacity, representing to this court what the law is post-Mittal. And whether there will be another application is speculative. As to the second point. Do you agree with me that it seems like you two are quite close then? They won't take yes for an answer, Your Honor. That's the problem in this case. We are agreeing with them on the reading of the law post-Mittal. Now, in City of Los Angeles versus Lyons, the city, the second point. You said they won't take yes for an answer. So you're willing to reduce some agreement to writing about what will be allowed and what won't be allowed? Well, Your Honor, I have provided a writing. I've provided two briefs in this court with our statement as to Mittal. But if I'm an applicant. That's a brief. Yeah, if I'm an applicant, I want my display up, and I'm an atheist, and I look at your website or wherever this is promulgated, has there been any annotation saying, ah, we've had a big change. The Supreme Court changed the whole dynamic, and now we welcome satire. Would an applicant, other than the Fifth Circuit panel you're in front of, have any reason to know that there's been a change? Well, Your Honor, a reasonable applicant would see 111.13 on our website and would be familiar with Supreme Court precedent saying that you can't disallow speech on the basis. Retsch, they'd be familiar with a Supreme Court decision that I don't read as having changed anything. Now, you do, but how would you know? I do, and the Second Circuit does, Judge Higginson. It says it clarified the law. I read the Supreme Court and the Tulane Mall Review article both differently. I don't see them saying, this suddenly expanded First Amendment prohibition. But regardless, my question is, there's nothing in the record that was established below that says Texas has changed its position, nor are you telling me that there's anything online for an applicant to look at. They would have to know the briefs and the arguments to us to know it's changed. Is that right? Your Honor, I don't believe there's anything on the website. Maybe that's something we should look into. But what I do know is that this court does not have jurisdiction, federal courts don't have jurisdiction to award equitable relief when there's no ongoing violation. And here, there is no ongoing violation of any kind. Because of a promise made to us, and what's the authority even in the Supreme Court? I'm very respectful of your position. It seems to me that dialogue with them, therefore, should end at least the viewpoint portion. I don't know of a case that allows us, as he said, it's a formidable showing. Well, Your Honor, let me try it this way. In order to show that there is an ongoing harm, we could look to cases like Susan B. Anthony List versus Driehaus. That was decided by the Supreme Court a few years ago. In that case, you've got an Ohio election law that had their two core components. It had been enforced something like 20 to 80 times per year in the years leading up to the facts at issue in that case. And Ohio was saying that it was going to continue to enforce the law in the future. Now, on those two ingredients, the court held that there was the bona fide threat of prosecution. We see those same themes echoed in this court's decisions in the Oak Paloby plurality, and then in Morris versus Livingston, which effectively adopts the Oak Paloby plurality's view of the law as binding circuit precedent. Those are the ingredients that they're missing. And that's why there's no jurisdiction, because there's no ongoing violation. Thank you, counsel.